## VALK v. CRANDALL and others.

Persons intending to institute an association under the Act to authorize the business of banking, passed April 18, 1838, after subscribing articles of association, proceeded to elect a President and Directors. The *Directors* signed and recorded a certificate of its organization, made in the form prescribed by the sixteenth section of the Act, and proceeded to the transaction of business. This certificate, not being signed by the stockholders, was not in compliance with the law; and it was held that the Association had no legal existence or capacity.

A certificate signed by stockholders owning the amount of capital originally designated in the Articles, was subsequently filed in pursuance of the sixteenth section of the Act, and the bank became thereby legally constituted and organized.

C. subscribed the articles for twenty shares of stock intermediate the recording of the first certificate and the making of the second; and he and his wife gave their bond and mortgage for the par value of the shares, payable to the President of the bank. C. did not sign the second certificate, but he paid interest on his bond and mortgage half yearly for two years ensuing.

*Held*, that until the second certificate was filed, the bond and mortgage, were in effect payable to a fictitious person; they were without consideration, and no person could make an available title to the same. That, after the bank became a legitimate association, the stock formed a consideration, and C. recognized its existence, and so acted in regard to it, that his re-delivery of the bond and mortgage ought to be inferred. And as to his wife, no new acknowledgment by her being shown, the mortgage continued to be invalid.

A bond and mortgage given for stock subscribed to organize a bank under the Act, are valid, when the Articles provide for that mode of paying or securing the stock.

These associations are confined to the provisions of the Act authorizing them, and cannot be organized until all its substantial enactments on that subject are complied with.

The President of such a bank is the proper officer to assign its mortgages, and he may use his own seal in making such assignments.

    Sept. 13, and Oct. 4; Nov. 1, 1843.

THIS was a bill to foreclose a mortgage. The defence to the suit, the grounds upon which it was urged, and the facts which were established, are sufficiently stated in the opinion of of the court.

*R. B. Kimball*, for the complainant.

*A. C. Bradley*, for Crandall and wife.

THE ASSISTANT VICE-CHANCELLOR.—The complainant produces a mortgage of Crandall and wife, and a bond of Crandall to the President of the Farmers' Bank of Orleans, dated July 31, 1838, an assignment of the same by Lyman H. Phillips, President of that bank, to Richard D. Littell, dated October 25, 1838, and subsequent assignments, bringing the securities to the complainant's hands as assignee. In their defence to this prima facie case, Crandall and wife insist that there was no such bank or President when the mortgage was executed, and that there was no person or corporation authorized to take or receive the same. That Phillips had no power as President or otherwise to transfer the bond and mortgage. And that the bond and mortgage are without consideration and void.

The proofs exhibit the following case in reference to this defence.

The Farmers' Bank of Orleans was a banking association, organized under the "Act to authorize the business of Banking," passed April 18, 1838.

For the purpose of organizing it, Articles of Association were drawn up and signed by a great number of persons, each taking the number of shares of stock set opposite to his name. The shares were $50 each, and the amount of stock $200,000, with the right to increase it to $500,000. These Articles were dated May 19, 1838. On the second Monday of June, 1838, a majority of those subscribers met and elected thirteen Directors of the bank, of whom Phillips was one, and the Directors on the same day elected Phillips President of the bank. No other Directors or President were chosen until the annual election in June, 1839.

On the 23d day of July, 1838, *the Directors* signed, sealed and recorded a certificate, setting forth the organization of the bank, and other matters, intending to comply with the sixteenth section of the Act. It stated the *names*, &c., of all the shareholders, but it was not signed by any of the associates except the thirteen directors.

This proceeding it is conceded, was done in good faith. It being supposed that the bank was regularly organized, bonds and mortgages were given by various shareholders for their subscriptions to the stock. Crandall subscribed the Articles for 20 shares of stock, on the 31st of July, 1838, and the bond and mortgage in question were given for his subscription, in accordance with the article of the association, permitting payment for stock to be made in that mode.

On the 22d of September, 1838, shareholders to the amount of $211,250 met together and signed and sealed a certificate of their association, which conformed to the provisions of the sixteenth section of the act, and the same was recorded Oct. 3, 1838. Crandall did not sign this certificate.

I concur with the defendants in their proposition that this bank was confined to the provisions of the act, and could not be organized until all its substantial enactments on that subject were complied with. Also, that on the 31st day of July, 1838, when the mortgage was given, the bank had not been organized under the statute, it did not exist as a corporation or association, and there was at that time no *President of the Farmers' Bank of Orleans* known to the law, or competent to act as such.

It is not true, however, that Crandall gave no consent that Phillips should act as such President. Crandall signed the Articles of Association, and Phillips had been elected in pursuance of their provisions. And by executing the bond and mortgage, Crandall recognized " the President of the Bank" as an officer of the association, *de facto.*

We have seen that he was not then President *de jure,* and that the association had not advanced to the grade of a corporation. Had matters remained in this position, I do not perceive how any person could have derived an available title to this

bond and mortgage. They were made, in point of law, to a fictitious person. They did not resemble a note, thus payable, which is transferable by delivery ; and although equity recognizes the title to a bond and mortgage delivered by the former holder, for value, without a transfer in writing, yet in this instance there could not be a bona fide transfer without notice. No person filled the character of " President," and every purchaser would be chargeable with notice of that fact, and thus consequentially, with notice that the securities were given for a consideration and purpose that were never paid or accomplished. Whether Crandall, as one of the associates who got up this defective and abortive institution, would be permitted to make this objection against one who purchased the bond and mortgage for a valuable consideration paid in good faith to the President *de facto*, I need not determine.

The bank became legally organized on the 3d day of October, 1838, by a compliance with the requirements of the statute. The President and Directors previously selected were continued, and became legally in office, by the consent and acquiescence of the corporators. From that time there was a corporation or association, and an officer known to the law as the President of the Farmers' Bank of Orleans ; and no one questions but that a bond and mortgage executed to that officer after that date, would be valid, so far as this point is concerned.

It is evident, that Crandall recognized this officer as the holder of his bond and mortgage, after October 3, 1838. He paid interest on it, at the end of each six months, to January, 1841, which was an express recognition of the existence of the bond and mortgage in the hands of either the President of the bank, or of his assignee. From these acts, a re-delivery of the bond and mortgage by Crandall after the bank became a legal corporation, may be reasonably inferred. They are entirely inconsistent with the idea, that the securities remained in the hands of the fictitious obligee, or the person who, by a fiction, assumed that character. I shall therefore hold, as to Crandall, that after the 3d of October, 1838, he delivered the securities anew, or assented to their remaining as valid obligations in the hands of the then holder thereof. But it is said that they were without consideration.

It appears that they were given for the subscription of Crandall for the twenty shares of the stock of the bank. It was incumbent on him to prove that he did not receive the shares, and this he has failed to do. His omission to sign the certificate of September 22, 1838, does not prove that he did not receive the twenty shares. That omission is consistent with his having received them subsequently when he delivered the mortgage anew, or with his having sold and transferred them to some one who did execute the certificate. Although there was, as yet, no legal bank, and nothing but a bubble, still, after such a transfer, Crandall could not say that he had not received the shares for which he subscribed. I believe it was not urged that bonds and mortgages given for the subscriptions to stock in a bank, under this statute, would be invalid. Their validity was recognised in *Ely* v. *Sprague*, (1 Clarke's Ch. R. 351;) and see *Curtis* v. *Swartwout*, (1 N. Y. Legal Obs. 406, before Assist. V. C. Hoffman.)

Therefore in October, 1838, these securities were valid against Crandall in the Farmers' Bank of Orleans.

It is said that they were made payable to the *President*, &c., when the Articles of Association required that they should be taken to the bank. In this the practice of the bank was more conformable to the law than their Articles.

Another objection is that the assignment should have been under the seal of the corporation, and also that the President had no power to assign these securities. It was held in the case of *Curtis* v. *Swartwout*, by my learned predecessor, that the President was the proper officer to whom the mortgages should be made payable, and that he was the proper officer to assign the same. It follows that in making such assignment, his seal would be used, and not that of the corporation. A further answer to this is, that the assignment was good without a seal.

The bond and mortgage were used to obtain circulating notes, by the bank's transferring them with others to Littell, for Indiana state stock, and pledging the latter with the state comptroller. And Littell assigned the bond and mortgage to the comptroller, who subsequently assigned them to one West,

who transferred them to the complainant. It is made a point, that the comptroller had no authority to assign the mortgage to West, and that it was not in pursuance of the 9th or 11th sections of the Act. The Farmers' Bank having parted with the securities to Littell absolutely, I cannot discover the force of this objection. Nor do I find any evidence in the case which shows that Littell assigned the mortgage to the comptroller, in pursuance of the act of 1838.

The only remaining objection which need be noticed is, that the bond and mortgage are usurious. This assumes that they had no legal existence while in the hands of Phillips, and did not become operative until they were assigned to Littell. I think this assumption is erroneous. But if it were correct, there is no proof of the alleged usury. Littell testifies point blank, that he knew of no deduction from the amount of the mortgages. He was the alleged usurer, and if *he* was ignorant of it, there could have been no corrupt or usurious agreement.

My conclusion is that the bond and mortgage are valid in the hands of the complainant as against Crandall.

The case is different in regard to his wife. She was not an associate in the concern, or an inchoate corporator, when the mortgage was given; and for the reasons which I have stated, it was without force or validity in reference to her when she acknowledged its execution. She has done no act recognizing the mortgage, or in any manner acknowledging it according to law, since the mortgagee named in it has had a legal existence. As to her, it is a mortgage to a fictitious person, which her husband has subsequently delivered to a person in being. I think her interest in the lands is not affected by the mortgage.

The usual decree must be made for a computation of the amount due and a sale of the premises. The bill will be dismissed as to Mrs. Crandall.